IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**LUIS AIK AYALA-SEPULVEDA,**

    **Plaintiff,**

    v.

**MUNICIPALITY OF SAN GERMAN, et al.,**

    **Defendants.**

Civil No. 09-1471 (GAG/JA)

**OPINION AND ORDER**

    Plaintiff Luis Aik Ayala-Sepulveda ("Ayala-Sepulveda") filed this action alleging hostile work environment discrimination and retaliation on the basis of sex, as well as violations of his rights to due process and equal protection of the laws. The defendants move for partial judgment on the pleadings (Docket No. 16), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After a comprehensive review of the parties' submissions and the applicable law, the court **GRANTS** the defendants' motion (Docket No. 16).

**I.    Standard of Review**

    The court decides a Rule 12(c) motion under the same standard it applies to Rule 12(b)(6) motions to dismiss. Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). Accordingly, to survive a Rule 12(c) motion, the plaintiff must plead enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). In evaluating the complaint, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not

**Civil No. 09-1471 (GAG/JA)**                                        2

'show[n]'– 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. <u>Id.</u> at 1949-50 (citing <u>Twombly</u>, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. <u>Iqbal</u> 129 S. Ct. at 1950.

**I.    Relevant Background as Alleged in the Complaint**

Plaintiff Ayala-Sepulveda has been employed by co-defendant, the Municipality of San German, in different positions since March 2001. In 2005, Ayala-Sepulveda was promoted to Administrative Assistant I and assigned to the Municipal Office for Emergency Management ("OMME" by its acronym from the Spanish "Oficina Municipal para el Manejo de Emergencias").

Ayala-Sepulveda claims that during 2006, when he began taking rescue courses, he was ridiculed and mocked by his coworkers due to his sexual orientation; he was told that he could never work as a rescuer because he was a homosexual. Later, between 2007 and 2008, he contends that he began to suffer a patern of discrimination and retaliation, perpetrated by his coworkers and supervisors, after having a romantic relationship with another male coworker. According to the plaintiff, the relationship with his coworker, Jose J. Rodriguez-Vega ("Rodriguez-Vega"), took place between September 10 and December 24, 2007, when Ayala-Sepulveda was on annual leave. The relationship ended after a confrontation ensued on December 31st over a romantic relationship between Rodriguez-Vega and a female coworker. The plaintiff alleges that the failed relationship created a problematic work environment after Rodriguez-Vega publicly denied having had any romantic involvement with Ayala-Sepulveda and accused him of intentionally fabricating the romance. Ayala-Sepulveda claims that he feared for his safety, since Rodriguez-Vega had been previously convicted of domestic violence and wore an ankle bracelet issued by the authorities. In January 2008, Ayala-Sepulveda met with his supervisor, the Director of OMME, Nelson Cruz-Malave ("Cruz-Malave"), to explain his concerns and ask that their assignments be managed so as

**Civil No. 09-1471 (GAG/JA)**               3

to avoid contact; however, Rodriguez-Vega eventually asked for a change in his shifts.

Notwithstanding, Rodriguez-Vega continued to harass and threaten Ayala-Sepulveda, using written notes and physical confrontations and attacks, including a violent altercation on February 15, 2008. On that day, Cruz-Malave had to ask Rodriguez-Vega to leave the premises and was later forced to call the Puerto Rico Police to provide protection because Rodriguez-Vega called the office and threatened Ayala-Sepulveda with grave bodily harm by a group of youngsters that were waiting by his car. Subsequently, at a February 19, 2008 meeting of the statewide agency for emergency management, Ayala-Sepulveda was confronted by another coworker, Pablo Miranda-Santana ("Miranda-Santana"), who accused him of intervening in his marriage, though they had never had a romantic relationship together. The next day, Ayala-Sepulveda met with the Municipality's Director of Human Resources, Juan A. Crespo-Roman ("Crespo-Roman"), who agreed with Ayala-Sepulveda, that Miranda-Santana was part of a joint plan with Rodriguez-Vega to oust him from OMME. Crespo-Roman suggested that Ayala-Sepulveda consider a transfer to another Municipal department. In addition, Ayala-Sepulveda spoke with the Director of OMME, who also suggested that he transfer to another area and gave him a short leave of absence to "meditate." That same night, Crespo-Roman called Ayala-Sepulveda at his home and instructed him to meet with the Mayor's Special Aide, Jose Ivan Torres ("Torres"), because he was going to be immediately transfered to the Municipal Cemetery since "the situation was worse than imagined."

According to the plaintiff, on February 25, 2008, he met with Torres and Crespo-Roman at the Mayor's office. They told him that the Mayor wanted him at the Municipal Cemetery. When he asked why, he was told that it was due to the situation with Rodriguez-Vega. When he refused the transfer, he was told that the next day he would meet personally with the Mayor. The next day, Ayala-Sepulveda met with Torres, Crespo-Roman and the Mayor, who insisted that he "voluntarily" transfer to the cemetery. After refusing and explaining that this treatment was undeserved, since Rodriguez-Vega was the "problematic" employee, the Mayor suggested that he try the transfer for one month. Upon refusing once more, the Mayor responded that the situation would be solved "the next day." On Febrary 27, 2008, Ayala-Sepulveda was cited to a meeting with the Mayor, Rodriguez-Vega, and Miranda-Santana. The plaintiff claims that at this meeting the Mayor validated

**Civil No. 09-1471 (GAG/JA)**                4

the homophobic and discriminatory agenda of Rodriguez-Vega and Miranda-Santana. After this meeting, the plaintiff was so distressed that he had to visit his primary physician, who prescribed medications for anxiety and panic attacks, and recommended immediate rest. On Febrary 29, 2008, Ayala-Sepulveda began to receive treatment by the State Insurance Fund for his emotional condition. The plaintiff also claims that the Mayor met with his mother, Brunilda, and his sister, Agueda, who wanted to know why the Mayor was treating Ayala-Sepulveda unfairly. In an attempt to denounce his homosexuality, the Mayor allegedly responded that the problem with Ayala-Sepulveda was his sexual definition.

On May 27, 2008, Ayala-Sepulveda filed a complaint for discrimination with the Puerto Rico administrative agency in charge of the review of public personnel actions ("CASARH" by its acronym from the Spanish "Comision Apelativa del Sistema de Administracion de Recursos Humanos del Servicio Publico"). Two days later, on May 29, 2008, the Municipality received notice of plaintiff's action. The next day, May 30th, Ayala-Sepulveda recived a letter from the Mayor informing him of his immediate transfer to the Finance Department as an Accounting Clerk. On June 3, 2008, Ayala-Sepulveda appealed his transfer to the CASARH. During the month of July 2008, Crespo-Roman interrogated Ayala-Sepulveda's coworkers regarding his CASARH complaints. The plaintiff contends that while he was at the Finance Department, the mockery and ridicule by his coworkers at OMME continued and another false rumor was started regarding a nonexistent romantic relationship between the plaintiff and a former coworker at OMME, Joel Mercado. On August 15, 2008, Ayala-Sepulveda filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") for discrimination and reprisals based on sex and gender stereotyping. On February 24, 2009, the EEOC issued a "Dismissal and Notice of Rights" to both the Municipality of San German and Ayala-Sepulveda.

On May 26, 2009, Ayala-Sepulveda filed a complaint before this court (Docket No. 1) against the Municipality of San German and its mayor, Isidro Negron-Irizarry (collectively "Defendants") alleging that he was discriminated against because of his sex in violation of Title VII

**Civil No. 09-1471 (GAG/JA)**           5

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").[1]  Specifically, Ayala-Sepulveda alleges that he was subject to retaliation and hostile work environment discrimination because of his gender. He also brought this action pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C § 1983 ("Section 1983"), alleging violations of his rights to due process and equal protection under the Constitution of the United States, as well as several Puerto Rico laws. The defendants now move for partial judgment on the pleadings (Docket No. 16.) The motion was timely opposed by the plaintiff (Docket No. 27) and defendants replied (Docket no. 30).

**III.    Discussion**

Defendants argue that the plaintiff failed to state a claim under Title VII because the statute does not provide relief for discrimination based on sexual orientation, for which reason his retaliation claim should also be dismissed. Defendants also contend that the plaintiff failed to state a claim under Section 1983 for violation of his due process rights, since he was not deprived of a property interest requiring that he be afforded any type of pre-determination process.

   **A.    Title VII**

Title VII prohibits employers from discriminating against an individual with respect to his employment "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The statutory 'because of . . . sex' requirement is not met merely because workplace harassment involves sexual matters: the substance of the violation is *discrimination based on sex . . .*" Higgins v. New Balance Ath. Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999) In other words, "[t]he critical issue [in Title VII cases] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998) (internal quotation marks omitted). Thus, in the present case, the plaintiff must allege that he was discriminated against because of his sex, i.e. because he is a man. See id.

If the court takes as true all of the factual pleadings in his complaint, Ayala-Sepulveda was

---

[1] The court notes that, as previously held, the plaintiff has no claim under Title VII against the mayor in his personal capacity. (See Docket No. 9).

subjected to "a noxious practice, deserving censure and opprobrium." Higgins, 194 F.3d at 259. However, according to current and binding First Circuit precedent, Ayala-Sepulveda has failed to effectively allege that he was subjected to a hostile work environment because of his sex under Title VII. The caselaw from this circuit has established that, "Title VII does not proscribe harassment simply because of sexual orientation." Id. (citing Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 751-52 & n.3 (4th Cir. 1996); Williamson v. A.G. Edwards & Sons, 876 F.2d 69, 70 (8th Cir. 1989)); see also Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 264 (3d Cir. 2001) (holding that a hostile work environment claim fails where plaintiff was subjected to vulgar statements regarding his sexual orientation and practices accompanied by physical assault and graffiti because the plaintiff failed to claim that he was discriminated because he was a man); Spearman v. Ford Motor Co., 231 F.3d 1080, 1085 (7th Cir. 2000) (male employee who endured threatening and hostile statements, taunting, and graffiti did not establish hostile work environment claim because his co-workers "maligned him because of his apparent homosexuality, and not because of his sex"). Ayala-Sepulveda alleges that he experienced discrimination by his fellow co-workers and by his supervisors, in the form of a hostile work environment and a demotion, because he was a homosexual man and had had an affair with another male coworker. Thus, his claim is that he was discriminated against because of his sexual orientation, not because of any other trait that is sex or gender related.

According to the plaintiff, "[his] Title VII discrimination cause of action is based upon the proposition that tangible employment actions were taken against him because his behavior did not conform to the stereotype of a male and was more akin to the stereotype of a gay man . . ." (Docket No. 27 at 4.) In other words, plaintiff argues that he has a cause of action for "sex stereotyping" under Price Waterhouse v. Hopkins, 490 U.S. 228, 250-52 (1989), in which the Court ruled that an individual who suffered adverse employment consequences because she did not match the social stereotypes associated with her protected group had an actionable claim under Title VII. As explained by the First Circuit in Higgins, "just as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, a man can ground a claim on evidence that other men discriminated against him because he did not meet

**Civil No. 09-1471 (GAG/JA)**                7

stereotyped expectations of masculinity." Id. 194 F.3d at 261 n.4 (internal citations omitted). However, the only allegation of sex stereotyping included in plaintiff's complaint is that the defendants "acted upon their perception of Plaintiff as a man who did not conform with the gender stereotypes associated with men in our society." (Docket No. 1 ¶ 5.2.) This allegation does not withstand scrutiny under Iqbal. It is merely a conclusory allegation, which the court cannot consider. The factual allegations proffered by the plaintiff are specific as to the defendants' motivation: that they knew of plaintiff's sexual orientation; that he had an affair with another man, Rodriguez-Ayala; and that adverse employment actions were taken against him as a consecuence of the fallout of his relationship with Rodriguez-Ayala. The theory supported by the facts adequately presented is that the Mayor, who sponsored the homophobic agenda of the plaintiff's coworkers, transfered the latter to a different department of the Municipality because of his sexual orientation.

In Prowel v. Wise Business Forms, Inc., --- F.3d ----, 2009 WL 2634646 (3rd Cir. 2009), which Ayala-Sepulveda cites in support of his theory, the plaintiff –a homosexual individual– identified himself as an effeminate man and claimed that his mannerisms caused him to be discriminated against. In that case, the Third Circuit reversed summary judgment for the defendant because the record was unclear as to whether the harassment that the plaintiff suffered was because of his homosexuality, his effeminacy, or both. After finding that the record was ambigious as to this dispositive question, the Third Circuit determined that the gender stereotyping claim had to be submitted to the jury. Here, Ayala-Sepulveda's only well-pled claim of sexual stereotyping is the very fact that he is attracted to other men and had an affair with a member of the same sex. Under both First and Third Circuit caselaw, however, that is not enough to bring a claim under Title VII. See also Simonton v. Runyon, 232 F.3d 33, 38 (2nd Cir. 2000) (finding that the gender stereotype theory articulated in Price Waterhouse did not necessarily apply to sexual orientation harassment: "This theory would not bootstrap protection for sexual orientation into Title VII because not all homosexual men are stereotypically feminine, and not all heterosexual men are stereotypically masculine."). Although "the line between sexual orientation discrimination and discrimination 'because of sex' can be difficult to draw," Prowel, 2009 WL *5, unlike Prowel's claims of discrimination, the plaintiff's allegations in this case do fall clearly on one side of the line.

The plaintiff in this case also proffers a retaliation claim under 42 U.S.C. § 2000e-3(a) which "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 60 (2006) (citing 42 § 2000e-3(a)). To prove a prima facie case of retaliation Ayala-Sepulveda must allege that: (1) he engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009). An employee has engaged in activity "protected by Title VII" if he has either "(1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Id. (internal citation omitted).

The defendants point out that the plaintiff failed to comply with the first requirement. Ayala-Sepulveda alleges that he engaged in protected conduct when he formalized his complaints at his job and before the CASARH and EEOC, regarding his treatment by his coworkers and supervisors stemming from the failed romantic relationship with Rodriguez-Vega. As discussed above, Title VII does not proscribe harassment simply because of sexual orientation. Higgins, 194 F.3d at 259. Thus, Ayala-Sepulveda's complaint was not directed at an unlawful practice as it did not point out "discrimination against particular inviduals nor discriminatory practices by Defendants." Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009). The plaintiff contends, however, that under Petitti v. New England Tel. & Tel. Co., 909 F.2d 28 (1st Cir. 1990), "the success of a retaliation claim does not require that the conduct plaintiff opposed was in fact a Title VII violation." Id. at 33. "It is sufficient if the plaintiff has a reasonable belief that there is a Title VII violation." Id. (citations omitted).

The court is not persuaded by this argument. Though the plaintiff might have had a subjective belief that the conduct engaged in by his coworkers and supervisors constituted a Title VII violation, that belief cannot be considered objectively reasonable since his complaint was founded entirely on sexual orientation, which is not a protected activity under Title VII. See,

e.g., Ianetta v. Putnam Investments, Inc., 183 F. Supp. 2d 415, 423 (D. Mass. 2002). The language cited by the plaintiff in support of his argument refers more appropriately to situations where the plaintiff in a case might fail to prove, on the evidence, that a Title VII violation occured *in fact*, though the alleged conduct fell under the scope of the statute. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178-79 (2nd Cir. 1996). However, it does not suggest that a Title VII retaliation claim may be sustained where the plaintiff did not complain of discrimination that is protected under the statute.

Therefore, the court must **GRANT** the defendants' motion on this ground and dismiss the Title VII claims for failure to state a claim upon which relief can be granted.

**B.     Section 1983 & Procedural Due Process**

The plaintiff also brought a claim for the violation of his constitutional right to due process under the Fourteenth Amendment, pursuant to section 1983. This disposition "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State [. . .].' " Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). In order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements of the cause of action: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989). The defendants in this case argue against the plaintiff's compliance with the second element of his cause of action.

A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due process of law." Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (citations omitted). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985); Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004)). In order to determine whether public employees possess such a property right, the First Circuit requires that the court examine local law and the terms and

**Civil No. 09-1471 (GAG/JA)**          10

conditions of the employment arrangement. Id. It is not disputed in this case that the plaintiff was a "career" or tenured employee and that "Puerto Rico law gives employees with such status 'property' rights in their continued employment." Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988) (citing Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 262 (1st Cir. 1987)). Accordingly, such employees can only be fired for good cause and with at least an informal hearing before their discharge. Id. However, as pointed out by the defendants, these employees "have a property interest in their continued employment, not in the functions they perform.'" Ruiz-Casillas, 415 F.3d at 134 (quoting Rosado de Velez v. Zayas, 328 F. Supp. 2d 202, 212 (P.R. Dec. 2004)). Since the plaintiff's allegations in this case do not involve the termination of his employment, but merely a change in his functions, i.e. a transfer from one division of the municipal government to another, the plaintiff cannot obtain redress for a due process violation, even if the defendants' alleged actions would constitute adverse employment actions. See Ruiz-Casillas, 415 F.3d at 134.

Therefore, the court must **GRANT** the defendants' motion on this ground and dismiss the plaintiff's section 1983 due process claim.[2]

**IV.     Conclusion**

For the aforementioned reasons, the court **GRANTS** defendants' motion for partial judgment on the pleadings (Docket No. 16) and dismisses all of the plaintiff's Title VII claims, as well as his procedural due process claim brought pursuant to section 1983.

**SO ORDERED**.

In San Juan, Puerto Rico this 30th of September, 2009.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ
United States District Judge

---

[2] The court notes that the defendants did not move to dismiss the plaintiff's section 1983 Equal Protection claim, nor his supplemental claims under Law 100, P.R. Laws Ann., tit. 29 § 146 et seq., and Law 69, P.R. Laws Ann., tit 29 §1321 et. seq.