IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS AIK AYALA SEPULVEDA,

    Plaintiff,

    v.

MUNICIPALITY OF SAN GERMAN, et al.,

    Defendants.

CIVIL NO. 09-1471 (GAG)

**OPINION AND ORDER**

Plaintiff Luis Aik Ayala-Sepulveda ("Plaintiff") filed this action alleging sex discrimination in a hostile work environment, as well as violations of his right to equal protection under the law. Defendants, Municipality of San German and its mayor Isidro Negron Irizarry (collectively "Defendants"), move for summary judgment. After reviewing the pleadings and pertinent law, the court **GRANTS** the defendants' motion for summary judgment (Docket No. 55).

**I.    Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law'." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II. Relevant Factual and Procedural Background

Plaintiff Ayala-Sepulveda, a homosexual man, has been employed in multiple positions by co-defendant, the Municipality of San German. In all of his jobs until present Plaintiff has always been a municipal employee.

Plaintiff asserts that while working at the Municipal Office for Emergency Management ("OMME" by its acronym from the Spanish "Oficina Municipal para el Manejo de Emergencias"), Mr. Nelson Cruz Malave ("Cruz-Malave"), his supervisor and Director of OMME, stated that he did not understand how a man of Plaintiff's sexual orientation could work on and approve courses that required physical exertion and effort. Plaintiff contends that Cruz-Malave gave him four months of vacation with a specific agenda in mind to get Plaintiff out of the office when he returned. In contrast, Juan A. Crespo Roman ("Crespo-Roman"), the Municipality's Director of Human Resources, states in a report prepared in response to Plaintiff's complaint for discrimination filed with the Puerto Rico administrative agency in charge of the review of personnel actions ("CASARH" by its acronym from the Spanish "Comision Apelativa del Sistema de Administracion de Recursos Humanos del Servicio Publico"), that Plaintiff took a four month vacation because he was asked to exhaust his excess of compensatory days of leave to avoid having the Municipality pay for them.

Plaintiff states in his deposition that, on January 2008, when he returned to work from his vacation, Cruz-Malave changed Plaintiff's duties and shifts. Plaintiff alleges that Cruz-Malave

**Civil No. 09-1471 (GAG)**                                                   3

assigned him to the "graveyard shifts" instead of his regular schedule, moved Plaintiff out of his office to "a desk in a broom closet or storage area without a computer [or] a telephone," and told Plaintiff that he would no longer work any administrative matter. (Docket No. 55-3.) For several days Plaintiff was not assigned any duties.

Plaintiff alleges in the complaint[1] that he commenced a romantic relationship with Jose J. Rodriguez-Vega ("Rodriguez-Vega"), a male coworker, during his vacation. He alleges that the relationship ended on December 31, 2007 after a confrontation ensued regarding a romantic relationship between Rodriguez-Vega and a female coworker. He claims that upon his return to work he related his concerns to Cruz-Malave about a possible physical attack by Rodriguez-Vega.

Plaintiff worked one graveyard shift until Mayor Isidro Negron Irizarry ("Mayor") ordered Cruz-Malave to return Plaintiff to his regular working hours. Upon the Mayor's orders, Plaintiff met with Cruz-Malave and the Mayor's Special Aide, Jose Ivan Torres ("Torres"). During the meeting, Cruz-Malave spoke of the problems Plaintiff had with Rodriguez-Vega and presented a letter written by Rodriguez-Vega regarding the incident he had with Plaintiff upon his return to the office. According to Crespo-Roman's report, Plaintiff complained that he did not feel safe at OMME. Crespo-Roman and Torres suggested that Plaintiff transfer to the Municipal Cemetery since they were in need of a person able to work with personnel and with independent contractors, and because another worker was absent because of illness.

Plaintiff eventually met with the Mayor who suggested that he transfer to the Municipal Cemetery. According to Crespo-Roman's report, Plaintiff agreed to be placed on probation for one month. In this meeting, Plaintiff also asked Crespo-Roman to meet with Rodriguez-Vega. Crespo-Roman claims that after Plaintiff spoke with his mother he decided not to accept the transfer to the Cemetery. Moreover, he proposed that the OMME employees with whom he had experienced several encounters be removed from their positions. Plaintiff claims that the Mayor insisted on transferring him to the Municipal Cemetery when he protested other employee's salary increases.

---

[1] The court relates facts alleged in the complaint to facilitate analysis, however, the record before the court on summary judgment does not contain evidence supporting these allegations.

**Civil No. 09-1471 (GAG)**                4

However, Crespo-Roman's report states that, unlike Plaintiff, the employees that received salary increases had performed the duties of Medical Emergency Technicians and were duly certified by the competent agencies.

On May 29, 2008, Plaintiff filed a complaint for discrimination with CASARH. The next day, the Mayor sent a letter to Plaintiff informing him of his transfer to the Finance Department. The letter states that Plaintiff's transfer was based on service needs in compliance with the restructuring described in a memorandum sent out on March 19, 2007. This memorandum was sent to all municipal employees and officers regarding an administrative and personnel restructuring. Plaintiff understood, however, that Defendants institutionalized their discrimination by transferring him based on their understanding that he had a relationship with a coworker. However, Crespo-Roman states that Plaintiff was transferred "on the basis of service needs" and because he expressed a desire of being transferred to another dependency for personal problems he had at OMME. (Docket No. 60-2.) Plaintiff's salary and position remained the same.

On June 9, 2008, Plaintiff reported to the Finance Department and was assigned to work at the Pre-Intervention area. He was in charge of preparing documents related to the payment of invoices and entering all information related to the invoice into the data system so that the check could be issued to make that payment. Plaintiff mentions an incident where he was required to process some invoices from an attorney from the law firm which served as outside counsel to the Municipality. Even though it was within his duties to process the invoices, Plaintiff found it disrespectful, unethical and unprofessional to give him invoices with his name on them. Plaintiff states that this incident made him so nervous that he had to be hospitalized.

On May 26, 2009, Plaintiff filed a complaint before this court (Docket No. 1) against the Municipality of San German and its mayor, Isidro Negron-Irizarry alleging that he was discriminated against because of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Specifically, Plaintiff alleges that he was subject to retaliation and hostile work environment discrimination because of his gender. He also brought this action pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 ("§ 1983"), alleging violations of his rights to due process and equal protection under the Constitution of the United States, as well as

**Civil No. 09-1471 (GAG)**                                5

several Puerto Rico laws.  On September 30, 2009, the court granted Defendant's motion for partial judgment on the pleadings (Docket No. 16) and dismissed all of Plaintiff's Title VII claims, as well as his procedural due process claim brought pursuant to § 1983.  (Docket No. 35).  Ayala-Sepulveda v. Municipality of San German, 661 F. Supp. 2d 130 (D.P.R. 2009).

On April 30, 2010, Defendants moved for summary judgment (Docket No. 55) on Plaintiff's remaining § 1983 claim for sex discrimination in violation of Plaintiff's equal protection rights.  Plaintiff opposed the Defendant's motion for summary judgment July 1, 2010.  (Docket No. 64).

### III.   Discussion

#### A.   Statute of Limitations

A claim under § 1983 borrows its limitations period from state law and, therefore, carries a one-year statute of limitations in Puerto Rico.  P.R. Laws Ann. Tit. 31, § 5298(2); Morales-Tanon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18 (2008).

Defendants argue that Plaintiff's § 1983 claims are time-barred for having been filed after the one-year limitation period for personal injury actions.  In support of this assertion, Defendants contend that the date of accrual is set by the first discrete act of discrimination identified by the Plaintiff.  Plaintiff, on the other hand, contends that all of the discriminatory acts constitute a hostile work environment and that, therefore, none are time-barred as the continuing violation doctrine would apply in this case.

"Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  AMTRAK v. Morgan, 536 U.S. 101, 113 (2002).  As a general principle, § 1983 claims "accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based."  Torres-Rivera v. P.R. Elec. Power Auth., 598 F. Supp. 2d 250, 253 (D.P.R. 2009).  A claimant "is deemed to 'know' or 'learn' of the discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt."  Marrero-Gutierrez v. Molina, 491 F.3d 1, 5-6 (1st Cir. 2007).  Although § 1983 claims generally accrue after an act of discrimination, "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  AMTRAK, 536 U.S. at 114.

In AMTRAK, the Supreme Court distinguished between Title VII continuing violation

claims involving discrete acts and those claiming a hostile work environment. 536 U.S. 101, 153 (2002). Although the instant case does not involve a Title VII claim, the continuing violation doctrine has been widely applied to § 1983 cases within the First Circuit. Ruiz Casillas v. Camacho Morales, 2004 WL 3622480, at *5 (D.P.R 2004) (collecting cases within the First Circuit applying continuing violation doctrine to § 1983 claims). The parties' arguments will be analyzed accordingly.

The continuing violation doctrine allows a plaintiff to incorporate allegations that would ordinarily be time-barred if they "are part of the same unlawful employment practice and at least one act falls within the time period." Quiles-Marcucci v. Cooperativa De Ahorro Y Credito De Juana Diaz, Inc., 2009 WL 1941219, at *3 (D.P.R. 2009) (quoting AMTRAK, 536 U.S. at 117, 122). The continuing violation doctrine applies to a hostile work environment claim that involves "an aggregation of hostile acts extending over a period of time." See Hernandez-Payero v. Puerto Rico, 493 F. Supp. 2d 215, 223 (D.P.R. 2007). When determining whether a hostile work environment is demonstrated, the court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." AMTRAK, 536 U.S. at 116.

This court finds that there is a lack of evidence to establish a genuine issue of material fact to the effect that the alleged discriminatory conduct amounts to a hostile work environment. First, Plaintiff has not presented evidence as to the severity and frequency of the alleged discriminatory incidents. In his complaint, Plaintiff mentions that his coworkers mocked and ridiculed him throughout 2006 and 2008 and refers to two incidents involving Rodriguez-Vega and another incident involving Miranda-Santana. However, Plaintiff does not present any evidence supporting these allegations nor does the court find that such incidents are sufficiently severe and frequent as alleged to demonstrate an ongoing hostile environment of harassment and threats. Additionally, Plaintiff has not alleged, nor has he demonstrated thorough evidence, that he was not able to perform the work duties assigned to him, and as a result has failed to show that the alleged discriminatory conduct "unreasonably" interfered with his work performance. See Quiles-Marcucci, 2009 WL 1941219 , at *9 (D.P.R. 2009) (verbal abuse towards plaintiff allegedly causing medical attention

**Civil No. 09-1471 (GAG)**                            7

did not impede her work).

Because the court finds that there is no evidence and because the abovementioned incidents, as alleged, are not enough to demonstrate a hostile work environment, the continuing violation doctrine does not apply. Therefore, all of Plaintiff's alleged incidents of discrimination on the basis of sex that occurred more than one year prior to his May 26, 2009 filing are considered time-barred. Accordingly, in assessing the validity of Plaintiff's claims, the court will only consider the retaliation claim and the alleged discriminatory acts following it.

### B.   Adverse Employment Action

Defendants contend that in order to survive summary judgment, Plaintiff must demonstrate that a materially adverse employment action was taken against him. Defendants argue that none of the personnel actions adduced by Plaintiff rise to the level of a materially adverse employment action. In his opposition, Plaintiff avers that an adverse employment action exists because his job duties and work environment were substantially altered.

For a plaintiff to succeed on a claim of retaliation, as well as any employment discrimination case premised on disparate treatment, he must prove that "the employer took a materially adverse employment action against him." Blackie v. Maine, 75 F. 3d 716, 725 (1st Cir. 1996); Ramos-Biaggi v. Martinez, 98 F. Supp. 2d 171, 178 (D.P.R. 2000). "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry… that must be cast in objective terms." Blackie, 75 F.3d at 725-26. An adverse employment action is met when "the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Rodriguez-Garcia v. Miranda-Marin, 2010 WL 2473321, at *6 (1st Cir. 2010) (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218, 1220 (1st Cir. 1989) (explaining that the factfinder must "canvass the specific ways in which the plaintiff's job has changed" and "determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her rank and title.")).

Plaintiff claims that an adverse employment action occurred because his job duties and working environment were substantially altered. In an attempt to support his claim, Plaintiff, in his complaint, refers to changes in his job throughout 2006, 2007, and while working at OMME in 2008.

**Civil No. 09-1471 (GAG)**                                       8

However, the court has held that these instances are time-barred. Plaintiff also fails to present evidence before the court demonstrating the differences between his job at the Finance Department and his previous job at OMME. He therefore fails to offer evidence to support a finding that his transfer to the Finance Department materially changed the conditions of his job. See Alicea v. P.R. Torism Co., 270 F. Supp. 2d 243 (D.P.R. 2003) (plaintiff failed to show that his new working conditions were in any way altered).

Therefore, Plaintiff has failed to show that he suffered an adverse employment action due to his transfer to the Finance Department.

### C.    § 1983 and Equal Protection

In order to succeed in a § 1983 claim, Plaintiff must plead and prove three elements of the cause of action: (1) that the defendants acted under color of state law; (2) that he was deprived of federally protected rights, privileges, or immunities; and (3) that Defendants' alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989). The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." Concepcion v. Municipality of Gurabo, 558 F. Supp. 2d 149, 162 (D.P.R. 2007).

Plaintiff brings a § 1983 claim based on violations to the Equal Protection Clause, asserting that Defendants impermissibly classified him for treatment based on his sexual orientation. Defendants contend that Plaintiff fails to support a claim under the Equal Protection Clause for two reasons: (1) that Plaintiff fails to establish that the challenged action is driven by an element of purposeful or intentional discrimination, i.e., lack of causation, and (2) that the alleged classification based on sexual orientation does not survive rational basis.

#### 1.    Liability of Defendants

Government officials may be held liable "if the plaintiff can establish that [his] constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts

**Civil No. 09-1471 (GAG)**                           9

to condonation or tacit authorization." Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007). Under a theory of liability, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." Rodriguez-Garcia v. Miranda-Marin, 2010 WL 2473321, *at 7 (1st Cir. 2010).

When considering the liability of municipalities for claims under § 1983, a municipality cannot be held liable on a respondeat superior theory. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The municipality, though, is liable only if "through its deliberate conduct, the municipality was the 'moving force' behind the injury." Board of the County Commissioners, 520 U.S. at 404. In Puerto Rico, mayors "are the government officials ultimately responsible for employment decisions of the municipality." Miranda-Marin, 2010 WL 2473321, at *9 (quoting Municipality of Caguas, 495 F.3d 1). Therefore, in assessing the liability of the municipality, the court must first consider the actions of the Mayor.

First, Plaintiff contends that the Mayor failed to take remedial and effective action regarding his complaints of a hostile work environment. Plaintiff, though, does not show that the Mayor was the "moving force behind the plaintiff's deprivation of federal rights." Board of the County Commissioners, 520 U.S. at 399, 404 (for a municipality to be a moving force behind the plaintiff's injury, plaintiff must show that "municipal action was taken with the requisite degree of culpability"). Here, Plaintiff has failed to present evidence demonstrating the Mayor's requisite degree of culpability in failing to take remedial and effective action with respect to the alleged hostile work environment. In addition, Plaintiff asserts that the insistence of transferences, initially to the cemetery, followed by the actual transfer to the Finance Department amount to a tacit authorization of the discriminatory conduct by the Mayor. The only connection between the transfer and the alleged deprivation of rights is that the Mayor allegedly told Plaintiff's mother that the Plaintiff's problem was his sexual definition. Such remark, however, is insufficient to prove the Mayor's discriminatory intent. See Rios-Jimenez v. Sec'y of Veterans Affairs, 520 F.3d 31, 43-44 (1st Cir. 2008) (offhand comments "are not sufficiently severe of pervasive" to amount to discriminatory changes in employment).

**Civil No. 09-1471 (GAG)**                    10

For the foregoing reasons, Plaintiff has failed to present evidence showing that the Mayor acted with purposeful or intentional discrimination and has, therefore, failed to show that the alleged constitutional deprivations were caused by the Mayor.

### 2. Rational Basis Review

Even if Plaintiff had been able to prove causation in this case, the court understands that his claim fails under rational basis review.

Plaintiff argues that Defendants violated his equal protection rights by engaging in sex discrimination. Defendants argue that there are legitimate governmental interests that meet the rational basis review for the alleged discrimination in violation of the Equal Protection Clause. Defendants contend that Plaintiff was transferred to the Finance Department in order to reorganize the municipal workforce and to resolve a conflict among coworkers.

Under equal protection jurisprudence, governmental classifications that target non-suspect classes are subject to rational basis review. Cook v. Gates, 528 F.3d 42, 61 (1st Cir. 2008). Inasmuch as sexual orientation is not a suspect class, the court applies the rational basis review. Id. (applying the rational basis review after declining to recognize homosexuals as a suspect class for equal protection purposes). A non-suspect class will stand as long as it bears some rational relationship to the achievement of a reasonable and identifiable governmental objective. Aleman v. Melecio, 992 F. Supp. 91, 101 (D.P.R. 1998). Furthermore, if any fairly conceivable set of facts that "could provide a rational basis for the classification exists, the classification must be upheld." Boivin v. Black, 225 F.3d 36, 44 (1st Cir. 2000).

First, Defendants aver that Plaintiff was transferred to the Finance Department in accordance with their reorganization of the municipal workforce. They present evidence that the Municipality was undergoing an administrative and personnel restructuring through a letter giving notice to its employees. (Docket No. 60-3.) The Plaintiff argues that the document is a mere announcement and that Defendants do not present any evidence to sustain their argument that an evaluation was actually going to be conducted. However, Defendants present a letter of transfer in which the Mayor informed the Plaintiff that he was being transferred on the basis of service needs in order to maximize and improve the quality of the services being provided by the municipal dependencies.

**Civil No. 09-1471 (GAG)**               11

(Docket No. 60-2.) Furthermore, and most importantly, Plaintiff complained numerous times about the problems he had with Rodriguez-Vega at OMME. Defendants assert that they transferred Plaintiff in an attempt to resolve a conflict among coworkers and, in this sense, to maximize work performance. (Docket No. 60-4.) Plaintiff, in turn, does not offer any evidence which would rebut and create a genuine issue of fact as to the veracity of said actions.

Based on the above cited evidence, the court, thus, finds that Plaintiff's transfer to the Finance Department was rationally related to a legitimate government purpose. The court finds that it was a reasonable government objective for Defendants to attempt to maximize performance in the workplace by resolving the conflicts between Plaintiff and Rodriguez-Vega. Therefore, Plaintiff's equal protection claim fails.

**IV.   Conclusion**

For the aforementioned reasons, the court **GRANTS** the defendants motion for summary judgment on the pleadings and dismisses the plaintiff's equal protection claim brought pursuant to § 1983.

**SO ORDERED.**

In San Juan, Puerto Rico this 2nd day of August, 2010.


*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge